UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel Girish Parikh., <br><br> Plaintiffs, <br><br> v. <br><br> PREMERA BLUE CROSS, <br><br> Defendant. | NO. C01-0476P <br><br> ORDER DENYING DEFENDANT'S 12(b)(6) MOTION |

This matter comes before the Court on Defendant Premera Blue Cross' Motions for Dismissal of this case under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 59). Having reviewed the briefing and documentation submitted by the parties in this matter and having heard oral argument on this motion, the Court DENIES Defendant's Motion. The Court finds that Plaintiff Parikh has stated a claim upon which relief may be granted under 42 U.S.C. §1395h(i). The Court also finds that any ambiguity concerning the allegations Mr. Parikh has put forth shall be construed in his favor at this time. For these reasons, the Court will not dismiss this case.

BACKGROUND

Girish Parikh, the Relator in this matter, is bringing claims against Defendant Premera Blue Cross ("Premera" or "PBC") for Medicare fraud and retaliatory discharge. Mr. Parikh asserts that Premera submitted false claims to the Center for Medicaid and Medicare Services ("CMS") for services that Premera allegedly did not render. Mr. Parikh also alleges that it failed to collect overpayments it made to providers. (Dkt. No. 68 at 4). As part of these claims, Mr. Parikh states that PBC failed to perform mandatory Uniform Desk Reviews and backdated documentation to falsely

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 1

show that it had been completed in a previous fiscal year. (Id).   Mr. Parikh states that these allegations are based on knowledge he gained while working as an Appeals Coordinator and, later, as a Government Program Auditor for Premera from October 1998 to May 31, 2002.

Defendant Premera is a Washington based non-profit corporation with its principal place of business in Mountlake Terrace, Washington. Premera is a fiscal intermediary that services several government contracts, including operating as a subcontractor for The Department of Health and Human Services ("HHS"). HHS controls the CMS, who contracts with organizations such as Blue Cross Blue Shield Association ("BCBSA") to administer their Part A insurance programs. Part A programs cover hospital insurance (as opposed to Part B programs, which cover "medical" insurance, such as physician visits and outpatient care). BCBSA, in turn, subcontracts with private organizations, such as Premera, to act as the fiscal intermediary for the Part A programs. Premera services the states of Washington and Alaska, and has two primary roles: (1) auditing and reimbursing health care providers, and (2) acting as a Medicare Secondary Payer ("MSP") to providers who have first sought reimbursement from the beneficiaries' primary insurers.

Defendant's 12(b)(6) motion turns on the Court's interpretation of the scope of 42 U.S.C. §1395h(I) and the characterization of Parikh's allegations in reference to the language used in the statute, particularly whether or not Premera is shielded by qualified immunity or full immunity. Defendant claims that it is shielded under the statute by full immunity and that it cannot be held liable for some of the claims that the Relator is bringing in this case.  Mr. Parikh, on the other hand, argues that Defendant Premera only enjoys qualified immunity under the statute and that his claims should be allowed to go forward.

ANALYSIS

**A. The 12(b)(6) Standard**

When considering a motion for 12(b)(6) dismissal, the Court views all factual allegations as true and construes them in the light most favorable to the non-moving party. <u>North Star Int'l v.</u>

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 2

Arizona Corp. Comm'n, 720 F.2d 578, 580 (9th Cir. 1983). If the Court determines dismissal is proper, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Levine v. Diamanthuset, Inc., 950 F.2d 1478 (9th Cir. 1991).

**B. Statutory Ambiguity and Interpretation:**

    **1. Plain Language**

The question of immunity rests on interpretation of ambiguous statutory language. The statute addresses liability for contractors and carriers of Medicare benefits. In relevant part, the statute reads:

> (1) No individual designated pursuant to an agreement under this section as a certifying officer shall, in the absence of gross negligence or intent to defraud the United States, be liable with respect to any payments certified by him under this section.
> (2) No disbursing officer shall, in the absence of gross negligence or intent to defraud the United States, be liable with respect to any payments by him under this section if it was based upon a voucher signed by a certifying officer designated as provided in paragraph (1) of this subsection.
> (3) No such agency or organization shall be liable to the United States for any payments referred to in paragraph (1) or (2).

42 U.S.C. §1395h(I) (2002). Both parties offer strong statutory construction and policy arguments for interpreting 42 U.S.C. §1395h(i)(3) in their favor. Having weighed both sides' arguments, the Court finds that Congress did not intend for this statement to establish absolute statutory immunity for intermediaries, but rather qualified immunity as given to the certifying and disbursing officers in paragraphs (1) and (2).

Premera claims that the words "any payments" in subsection (3) refer to those payments made by certifying or disbursing officers, and not to the limiting clause "in the absence of gross negligence or intent to defraud the United States." Premera's argument is that if Congress had intended to apply the words "in the absence of gross negligence or intent to defraud the United States," to agencies or organizations such as Premera, it would have explicitly included the language in the statute. This argument relies on three general justifications: absolute immunity provides an incentive for

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 3

1  organizations to become non-profit intermediaries; intermediaries function as quasi-governmental

2  administrative agencies; and other remedies are available for punishing fraud. On the other hand,

3  Parikh states that the plain language of the statute indicates that Congress intended limited immunity.

4  The clause "payments referred to in paragraph (1) or (2)" directly refers back to the two previous

5  subsections, in which immunity is explicitly qualified. On policy grounds, Parikh asserts that it does not

6  make sense for Congress to want to shield organizations, even non-profit organizations, from liability

7  for intentionally defrauding the government.

8      Although both statutory construction arguments are plausible, Parikh's interpretation is more

9  convincing. A "cardinal principle of statutory construction" states that "a statute ought, upon the

10 whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous,

11 void, or insignificant." Duncan v. Walker, 533 U.S. 167, 173 (2001). Thus, the most natural reading

12 would suggest that the clause "all payments referred to in paragraph (1) or (2)" applies to all the ways

13 "payments" are described in the two previous subsections. Another clue to Congress' drafting intent is

14 the way the term "payments" is referred to in the title of the section. The title reads: Liability of

15 certifying and disbursing officers under agreement for *negligent, etc., payments.* 42 U.S.C.

16 §1395h(i)[emphasis added]. The Court can therefore read subsection (3) to mean intermediary

17 agencies and organizations are immune from liability for any payments made by their certifying or

18 disbursing officers, in the absence of gross negligence or intent to defraud the United States.

19      **2. Legislative History**

20      The legislative history of this statute is in accord with the Court's plain-language reading of the

21 statute. As pointed out by Plaintiff, the bill, as originally proposed by the House, only granted qualified

22 immunity to certifying and disbursing officers with respect to incorrect payments, so long as they acted

23 without gross negligence or intent to defraud the United States. (Dkt. No. 68 at 10). Amendments

24 made by the Senate (Nos. 55 and 129) added a third paragraph to the liability clause, extending the

25 immunity provision to cover the actual agency or organization as well as its designated officers.  42

26 ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 4

U.S.C. §1395h(i). The conference report provides explicit insight into the Congressional intent, "The Senate amendments [Nos. 55 and 129]...would grant agencies and organizations authorized to make payments under Part A...the same immunity from liability for incorrect payments...as would be provided their certifying and disbursing officers." H.R. Conf. Rep. No. 89-682, at 2231 (1965). Premera claims these remarks are "'brief and inconclusive.'" (Dkt. No. 59 at 11).

In 2003, The Medicare Prescription Drug, Improvement, and Modernization Act ("MMA") repealed §1395h(i), and enacted two significant changes. 42 U.S.C. §1395kk-1. First, it provided that fiscal intermediaries could operate as for-profit organizations. Second, Congress explicitly limited intermediaries' immunity in the language of the statute to those acts performed without reckless disregard of its obligations or with intent to defraud the United States. Premera correctly notes that this provision does not apply retroactively. (Dkt. No. 59 at 2, n.1). The United States, as a party in an earlier case, agreed: "the [2003 Act] does not go into effect until October 2005, and it does not apply retroactively to cases alleging fraud by a contractor prior to that date." See Brief for United States as Amicus Curiae Supporting Appellant at 20 n.7, United States ex rel. Sikkenga v. Regence Blue Cross Blue Shield of Utah, 2005 WL 2481683 (D. Utah Nov. 28, 2001) (10th Cir. appeal pending) (No. 05-4088). (Dkt. No. 59 at 2, n.1). Parikh does not dispute this claim.

Nonetheless, while recognizing that the MMA does not apply retroactively, the clarification it provides aids the Court's interpretation of the previous statute. The MMA unambiguously states that intermediaries are granted immunity only in the absence of reckless disregard or intent to defraud. 42 U.S.C. §1395kk-1. The Court construes this clarification to mean that qualified immunity for fiscal intermediaries like Premera was Congress' original intention.

In support of its claim for unqualified statutory immunity, Premera cites two 11th Circuit cases. United States ex rel. Body v. Blue Cross and Blue Shield of Alabama, Inc., 156 F.3d 1098 (11th Cir. 1998) and United States ex rel. Sarasola v. Aetna Life Ins., 319 F.3d 1292 (11th Cir. 2003). Both of

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 5

these decisions held that Congress intended for the statute to "give[] fiscal intermediaries full immunity from liability for payments that are certified by its certifying officers and issued by its disbursing officers." Body, 156 F.3d at 1111.  Premera also notes that a third case found the 11th Circuit rulings to be "persuasive." United States ex rel. Drescher v. Highmark, 305 F. Supp.2d 451, 462 (E.D. Pa. 2004). In citing these decisions, Premera claims that, "every federal court that has considered the scope of the immunity afforded intermediaries by section 1395h(i)(3) has either adopted the position urged upon this Court by Premera or found the logic underlying that position 'persuasive.'" (Dkt. No. 70 at 2). This position ignores the fact that Drescher court qualified its opinion in light of the newly enacted MMA, indicating that "Congress may have intended otherwise." Drescher, 305 F. Supp.2d at 462.  Neither the Body nor the Sarasola court considered the insight provided by the MMA of 2003 because they were decided prior to its enactment. The only federal court that considered the immunity language of the statute in light of the changes made by the MMA, is The District Court for the Eastern District of Pennsylvania in Drescher.

In light of the ambiguity of the old statute and the clarification provided by the recently enacted MMA and the Congressional language regarding intent, the Court interprets subsection (3) of 42 U.S.C. §1395h(i), as enacted in 1965, to mean that fiscal intermediaries are granted limited immunity. Both Body and Sarasola were decided prior to enactment of the MMA and therefore did not consider its implications.

**C. Questions of Fact**

    **1. Examining the Allegations in the Complaint**

The second dispute between the parties regarding the 12(b)(6) motion involves the allegations themselves. Regardless of the interpretation of the statute, *some* immunity is provided. Under the Court's reading of 42 U.S.C. §1395h(i)(3), Premera has immunity for all payments made by its certifying and disbursing officers in the absence of gross negligence or intent to defraud the

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 6

government. Thus, for immunity to apply, Premera's conduct must not be characterized by gross negligence or intent to defraud the United States *and* it must embody the meaning of the term "payments."

Parikh lists over 100 allegations in his Amended Complaint, but states that the "gist...concerns false performance certifications, the failure to collect overpayments, and the fraudulent concealment of this scheme." (Resp. at 4). Premera, however, subdivides the allegations into two categories. The first category involves actions by Premera that led to overpayment of Medicare funds. The second includes "phantom services," in which Premera sought payment from Medicare for services it did not actually perform. Premera is claiming statutory immunity for the first category of allegations, but not the second, for which it concedes potential liability. Parikh accuses Premera of oversimplifying his Complaint, and misconstruing the extent of the statutory immunity. One difference between each party's interpretation of the "gravamen of the complaint" is that Parikh's version implies an aspect of fraud, or at the very least gross negligence, for which Premera would not be immune. (Dkt. No. 70 at 2).

Putting aside the issue of fraud, another difference between each party's interpretation of the Amended Complaint applies to the second limiting factor: the term "payments." Premera characterizes Parikh's relevant allegations as overpayments, which it claims trigger immunity. Parikh, however, stresses that the allegations relate to a "failure to recoup overpayments made to provider." (Dkt. No. 68 at 2). Both of these characterizations of the claims rely on a literal definition of the word "payments." Black's Law Dictionary defines the term generally as: "[t]he fulfillment of a promise, or the performance of an agreement." Black's Law Dictionary 1129 (6th ed. 1990). Under this definition, it is possible that Premera may have immunity since its actions may fall within the general meaning of the term "payments."

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 7

Nonetheless, for the purposes of this 12(b)(6) motion, the Court will not reach this issue. Since the standard of review requires the Court to consider all facts in the light most favorable to Parikh, the allegations in the Amended Complaint should be read in a light most favorable to Parikh, as the author of the Complaint and the non-movant.

**2. Alleged Factual Uncertainty**

A final issue of factual uncertainty Parikh raises to dispute the 12(b)(6) motion is whether or not payments that might fall into the immunity clause were in fact certified or disbursed by the required designated officers. This issue, again, looks to the wording of the statute which refers to liability in terms of payments made by certifying or disbursing officers. If relevant, this discrepancy would create a third hurdle over which Premera would have to jump before asserting immunity for liability However, the Court will not reach this issue in consideration of a 12(b)(6) motion because, this allegation was not raised in either the Original or Amended Complaint.

CONCLUSION

Because the Court finds that 42 U.S.C. §1395h(i)(3) grants only qualified immunity to fiscal intermediaries like Premera Blue Cross and because it construes the allegations in the Complaint in favor of the Plaintiff, the Court DENIES Defendant's 12(b)(6) motion.

The clerk is directed to send copies of this order to all counsel of record.

Dated: September 22, 2006.

Marsha J. Pechman
United States District Judge

ORDER ON MOTION FOR 12(b)(6) DISMISSAL - 8