1

2

3                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
4                             AT SEATTLE

5   UNITED STATES OF AMERICA ex rel Girish
    Parikh.,
6
                                                    NO. C01-0476P
7            Plaintiffs,
                                                    ORDER DENYING DEFENDANT'S
8            v.                                      12(b)(1) MOTION

9   PREMERA BLUE CROSS,

10           Defendant.

11

12          This matter comes before the Court on Defendant Premera Blue Cross' Motion for Dismissal

13   of this case under Fed. R. Civ. P. 12(b)(1). (Dkt. No. 67).  Having reviewed the briefing and

14   documentation submitted by the parties in this matter and having heard oral argument on this motion,

15   the Court DENIES Defendant's Motion.  The Court finds that the documents that Defendant presents

16   are either not properly authenticated or do not constitute "public disclosures" under the meaning of 31

17   U.S.C. §3730(e)(4)(A).  For these reasons, the Court will not dismiss this case.

18                                        BACKGROUND

19          Girish Parikh, the Relator in this matter, is bringing claims against Defendant Premera Blue

20   Cross ("Premera" or "PBC") alleging Medicare fraud.  Defendant Premera is a Washington based non-

21   profit corporation with its principal place of business in Mountlake Terrace, Washington. Premera is a

22   fiscal intermediary that services several government contracts, including operating as a subcontractor

23   for The Department of Health and Human Services ("HHS"). HHS controls the CMS, who contracts

24   with organizations such as Blue Cross Blue Shield Association ("BCBSA") to administer their Part A

25   insurance programs. Part A programs cover hospital insurance (as opposed to Part B programs, which

26   ORDER on 12(b)(1) - 1

1   cover "medical" insurance, such as physician visits and outpatient care). BCBSA, in turn, subcontracts

2   with private organizations, such as Premera, to act as the fiscal intermediary for the Part A programs.

3   Premera services the states of Washington and Alaska, and  has two primary roles: (1) auditing and

4   reimbursing health care providers, and (2) acting as a Medicare Secondary Payer ("MSP") to providers

5   who have first sought reimbursement from the beneficiaries' primary insurers.

6        Mr. Parikh asserts that Premera submitted false claims to CMS for services it did not render

7   and that it failed to collect overpayments it made to providers. (Pl's Resp. at 4). As part of these

8   claims, Mr. Parikh states that PBC failed to perform mandatory Uniform Desk Reviews and backdated

9   documentation to falsely show that it had been completed in a previous fiscal year. (Id).

10        Defendants bring this motion for 12(b)(1) dismissal, claiming that the Court has been

11   statutorily stripped of jurisdiction over this qui tam action because the allegations of fraud upon which

12   Mr. Parikh bases his complaint have already been publicly disclosed and Mr. Parikh is not an "original

13   source" of this information.  In support of its motion, Defendant submits 59 separate documents that it

14   contends are public disclosures satisfying 31 U.S.C. §3730(e)(4)(A) ("the statute"), which provides:

> No court shall have jurisdiction over an action under this section based upon the public
> disclosure of allegations or transactions in a criminal, civil, administrative, or
> Government Accounting Office report, hearing, audit, or investigation, or from the
> news media, unless the action is brought by the Attorney General or the person
> bringing the action is an original source of the information.

31 U.S.C. §3730(e)(4)(A).  Mr. Parikh, on the other hand, states that Defendant has failed to

authenticate these documents, that they do not count as public disclosures under the statute, and that

Mr. Parikh should be considered an original source of the information contained in the documents.

     For convenience, the Court first outlines the evidentiary and statutory principles pertinent to

this inquiry.  Then, the Court will analyze each document to ascertain whether it is properly

authenticated and whether or not it could be a public disclosure.  Because both of these conditions

need to be met before the Court can use a document as the basis for dismissing any part of Mr.

ORDER on 12(b)(1) - 2

1   Parikh's action, the Court will only address whether of not Mr. Parikh is an "original source" of

2   information under the statute at the end of its analysis, if needed.

3                                       ANALYSIS

4   **I. Plaintiff's Evidentiary Objections**

5           **A. Defendant's Supplemental Briefing Regarding Authentication**

6           Plaintiff argues that Defendants have failed to authenticate the great majority of their

7   documents, which are accordingly inadmissible on a dispositive motion such as this one.   Defendants,

8   in response, argue that their documents are generally admissible under Fed. R. Evid. 901(b)(4), which

9   allows for authentication through the examination of a document's "distinctive characteristics," or

10  Fed. R. Evid. 902(5), which provides that "official documents" are self-authenticating. The Court

11  questioned the parties on this issue at oral argument. Defendant also submitted supplemental materials

12  regarding the authentication of twenty-seven of its originally submitted documents, along with briefing

13  on this issue (Dkt. No. 123).  The Court reviewed these materials and called for supplemental briefing

14  from Plaintiff about whether or not the Court should review the supplemental materials and if so,

15  whether the new materials properly serve to authenticate Defendant's documents.  The Plaintiff's

16  Response is posted at docket number 135.

17          Having carefully considered the issue, the Court has decided that it will not accept Defendant's

18  proffer of additional information regarding the authentication of its documents.  Defendant's

19  supplemental materials are untimely.  Premera had a chance to submit evidence regarding

20  authentication when it moved for dismissal, when it submitted its Reply brief and when the Court

21  heard oral argument.  Submitting supplemental materials without explicit leave of the Court more than

22  two months after the noting date on this motion and after oral argument has been heard, while the

23  Court is trying to draft its opinion slows down the judicial process and is an abuse of judicial

24  resources.

25

26  ORDER on 12(b)(1) - 3

1      Further, the Court will not allow further briefing at any time on this issue during the pendency

2   of this litigation. This Court adopts the Seventh Circuit's position that the public disclosure bar in 31

3   U.S.C. §3730(e)(4)(A) is not a true "jurisdictional" bar in that it does not govern the Court's ability to

4   hear a case so much as it governs the ability of certain parties to litigate a matter. United States v.

5   Emergency Medical Associates of Illinois, Inc., 436 F. 3d 726, 728 (7th Cir. 2006).  For this reason,

6   the Court does not consider the public disclosure bar to be a true subject matter jurisdictional

7   challenge that can be raised at any time throughout the course of the litigation.  The Court now turns

8   to the bases for authentication of Defendant's documents offered by Premera in its Reply brief (Dkt.

9   No. 90 at 1).

10          **B.  Authentication by the Court Under Fed. R. Evid. 901(b)(4)**

11      Defendant argues that many of the fifty-nine documents it submitted can be authenticated by

12   the Court on the basis of these documents' "distinctive characteristics." In Perez v. Alcoa Fujikura,

13   Ltd., the only published case to address the "distinctive characteristics" means of authenticating a

14   document, the court for the Western District of Texas noted that the "characteristics and contents of

15   [a] document, taken in conjunction with circumstances, will authenticate it." Perez v. Alcoa Fujikura,

16   Ltd., 969 F.Supp. 991, 999 (W.D.Tex.,1997).   Many of the documents that Defendant submits

17   concerning audits of Premera's role as a Medicare Fiscal Intermediary are marked in ways that are

18   potentially distinctive.  However, the declarations of Janet Russell (Def's Ex. B; Supplemental Russell

19   Decl. At Dkt. No. 90) submitted by Defendant to authenticate these documents do not address

20   themselves to the distinctive characteristics of these documents or her personal knowledge of the

21   distinctive marks on these documents and the circumstances under which they were created.  For this

22   reason, the Court will not consider the following documents because they are not self-authenticating

23   (see *infra*) and cannot be properly authenticated by this Court on the basis of their "distinctive

24   characteristics" without more information concerning the circumstances under which they were

25

26   ORDER on 12(b)(1) - 4

1   created: D-1, D-2, D-3, D-4, D-6, D-7, D-8, D-9, D-10, D-11, D-12, D-15, D-16, D-17, D-18, D-40,

2   D-42, D-43, D-44, D-45, D-46, D-49, D-50, D-51, D-52, D-53, D-54, and D-55.

3   **C. Self-authentication Under Fed. R. Evid. 902(5)**

4   Defendants also claim that many of their proffered exhibits are self-authenticating because

5   they can be classified a "Official Publications" under this rule.  The text of this section indicates that

6   "[b]ooks, pamphlets, or other publications purporting to be issued by public authority" are self-

7   authenticating.  Fed. R. Evid. 902(5). Only two federal cases have addressed this sub-section of Rule

8   902 and both are unpublished.  In one, the U.S. Court for the Central District of California held that

9   "exhibits which consist of records from government websites, such as the FCC website, are self-

10  authenticating." Hispanic Broadcasting Corp. v. Educational Media Foundation 2003 WL 22867633,

11  *5 (C.D.Cal.,2003) (citations omitted).  In the other case, the Eastern District of Louisiana admitted

12  Department of Labor Statistics as self-authenticating. Joseph v. Lee 1995 WL 301378, *1

13  (E.D.La.1995).  There is no official definition or commentary as to what constitutes a "book,

14  pamphlet, or other publication, " so the Court will apply the plain meaning of these terms to the case

15  at hand. Wright and Gold on the Federal Rules of Evidence suggests that:

16  [w]hile the provision does not define the term, 'publication,' there is no reason to
    assume that the drafters had anything other than the commonly employed meaning in
17  mind: a writing produced in multiple copies for distribution to persons beyond those
    involved in the creation of a writing.

18

19  31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence §7139

20  (2000).  Some of the documents that Defendant claims are self-authenticating do appear to fit under

21  this definition.  For this reason, the Court will consider documents that can be found on Government

22  websites, such as GAO Reports and Health and Human Services' Reports.

23  **D. Self-authentication Under Fed. R. Evid. 902(6)**

24  Defendants do not argue that any of their materials are self-authenticating under Fed. R. Evid.

25  902(6).  However, because Defendants submit several documents that purport to be the text of

26  ORDER on 12(b)(1) - 5

newspaper articles, as well as articles from trade journals and other periodicals, the Court finds it necessary to address this issue.  None of the three federal cases that have addressed this Rule discuss it at length. <u>See</u> <u>e.g.</u> <u>Hicks v. Charles Pfizer & Co., Inc.</u>, 368 F. Supp. 2d 628 (E.D. Tex. 2005); <u>Arachnid, Inc. v. Valley Recreation Products, Inc.</u>, 2001 WL 16664052 (N.D. Ill. 2001); <u>LaSalle v. Medco Research, Inc.</u>, 1996 WL 252474 (N.D. Ill. 1996).  The comment to this Rule states that, "[t]he likelihood of forgery of newspapers or periodicals is slight indeed. Hence no danger is apparent in receiving them."  Fed. R. Evid. 902(6).  The problem the Court now faces is the fact that all of the newspaper or other periodical articles submitted by Defendant appear to have been printed from an internet media search service.  The original clippings, or even photocopies of the originals, are not provided.  Instead, the Court has merely received what appears to be the purported text of the articles typed into and printed from a computer.  There are no distinctive headlines, nor are there any unique typesetting techniques employed that would make these purported copies of original text difficult to forge.  Additionally, in many cases, the Court cannot tell from which internet service the documents were obtained.  The Court questioned the Defense attorney about these documents at oral argument and he admitted to the Court that he had no personal knowledge regarding where these documents were found on the internet because he had an assistant obtain these documents for him.  For these reasons, the Court must reject the articles submitted by Defendants as non-self-authenticating.  Accordingly, the following documents will not be considered by the Court in support of Defendant's motion: D-13, D-21, D-23, D-24, D-25, D-26, D-27, D-28, D-29, D-33 and D-35.  The documents that have not yet been eliminated from the Court's review on evidentiary grounds will be considered individually in the discussion below.

**II.  What Constitutes a Public Disclosure under 31 U.S.C. §3730(e)(4)(A)?**

In order to determine what constitutes a public disclosure under 31 U.S.C. §3730(e)(4)(A), courts must engage in a two-tiered inquiry. First, the Court must determine whether or not there was a

prior public disclosure of the charges underlying a qui tam suit.  If the answer to this question is "yes," then the Court must determine if the Relator is an original source of the information under the language of the statute. A-1 Ambulance Service, Inc. v. California, 202 F. 3d 1238, 1243 (9th Cir. 2000).  Only if the Court answers the first part of this inquiry in the affirmative is it necessary to reach the second part. Id., see also  Wang v. FMC Corp., 975 F. 2d 1412, 1416 (9th Cir. 1992).

Under the public disclosure prong of this test, there are two more requirements.  First, is the disclosure a statutory disclosure that comes from either a 1) "criminal, civil, or administrative hearing;" 2) a "congressional, administrative, or GAO report, hearing, audit, or investigation;" or 3) from the "news media?"  A-1 Ambulance, 2020 F. 3d at 1243. If the Court is satisfied that the alleged disclosure comes from one of these statutory sources, then the Court must also determine if the content of the disclosure is comprised of "allegations or transactions" giving rise to the relators claim, in contrast to "mere information." Id.  The key question here is whether or not the purported public disclosure reveals enough information to allow the Government to pursue an investigation into the operations of a given defendant. United States v. Alcan Elec.and Engineering, Inc., 197 F. 3d 1014, 1019 (9th Cir. 1999).  It is notable, too,  that the alleged disclosure need not name a particular defendant in order to qualify as a public disclosure. Id. Courts have generally held that discovery permitted during the qui tam suit as part of the qui tam suit does not qualify as a public disclosure under these principles.  Wang, 975 F. 2d at 1416.

### III.  Applying the Public Disclosure Principles to Individual Documents:

**Exhibit D-5:** This Document appears to be a GAO report dated September 2000 and entitled, "Medicare: HCFA Could Do More to Identify and Collect Overpayments."  This exhibit meets the criteria for self-authentication under Fed. R. Evid. 902(5) because it is a governmental publication that looks as if it were meant to be disseminated widely.

ORDER on 12(b)(1) - 7

1    In Alcan Electrical, the Ninth Circuit held that a GAO report constituted a public disclosure.

2 In that matter, the GAO report at issue did not name the Defendant explicitly, but contained enough

3 information to instigate a Governmental investigation of the Defendant. 197 F. 3d 1014.  The Ninth

4 Circuit has also framed this test in another way, stating that:

> [i]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

United States ex rel. Foundation Aiding the Elderly v. Horizon West, Inc., 265 F. 3d 1011, 1015 (9th

Cir. 2001)(citations omitted).  By adopting this formula, the Ninth Circuit has signaled its desire that

courts look for substantive allegations in purported public disclosures that would allow the

Government to commence an investigation of a particular defendant, even if that defendant is not

named. The Court should not find a document to be a public disclosure under the statute if it only

supplies "mere information."A-1 Ambulance, 2020 F. 3d at 1243.

15    This document notes the difficulty that HCFA was having in monitoring the overpayment

16 collection efforts of Medicare contractors, such as PBC.  PBC is not mentioned in this document.  The

17 document provides estimates of how much the Government might have been overpaying for its

18 Medicare program.  Much of the document is phrased in general terms and describes new,

19 experimental programs that were being implemented to address the overpayment problem. It does not

20 appear clear to the Court from this document that the Government or the GAO's office knew who the

21 problem contractors within the system were, or even which regions of the country were most

22 problematic.  Instead, it is clear that the Government had identified a problem, but this document

23 seems to have been produced when the problem was just being recognized and could not have been

24 the basis for an investigation against PBC.  Instead, this document appears to provide "mere

25 information." For this reason, the Court finds that it is not a "public disclosure" under the statute.

26 ORDER on 12(b)(1) - 8

1

**Exhibit D-14:**  This document is a GAO report from July 1999 entitled: "Medicare:

2   Improprieties by Contractors Compromised Medicare Program Integrity."  As with the GAO report

3   considered in Ex. D-5, this exhibit is a self-authenticating government publication that has been

4   distributed to some portion of the public.  The Court must now address whether or not this document

5   is a public disclosure under the statute.

6

Document D-14 does not appear to meet the X + Y = Z test described above.  While there is

7   information about fraud and specific allegations directed at BCBSA affiliates, such as the Michigan

8   and Illinois contractors, there is no indication that <u>every</u> BCBSA contractor was under suspicion or

9   that the GAO was concerned about the Northwest.  For these reasons, the Court doubts that this

10  report could have led to an investigation into the practices of Premera as a fiscal intermediary.  This

11  document is properly considered as "mere information" and cannot form the basis for dismissing all or

12  part of Relator Parikh's case.

13

**Exhibit D-19:**  This document appears to be a case printed from Westlaw that details the

14  disagreement during the 1990's between HHS and hospitals regarding the definition of and

15  reimbursement for "Medicaid days."  This document can be authenticated by the Court based on its

16  distinctive characteristics under FRE 901(b)(4).  However, it cannot be a public disclosure under the

17  statute because it does not provide enough information to launch a government investigation into

18  PBC's operations.  It provides generalized "mere information" and does not satisfy the X + Y = Z test.

19

**Exhibit D-20:** This document appears to be an administrative ruling by HCFA changing the

20  definition of "Medicaid days" to conform with the definitions adopted by several Circuit Courts,

21  including the Ninth.  It is difficult to know where the copy of this ruling came from, but authentication

22  is beside the point here.  This document cannot qualify as a "public disclosure" because there is no

23  information contained in it regarding fraud allegations directed toward Medicare contractors.  This

24  document merely proposes a solution to wide-spread confusion that was plaguing the entire Medicare

25

26  ORDER on 12(b)(1) - 9

system. This document does not satisfy the X+Y= Z test and no investigation into Premera's activities could have been undertaken on the basis of the information contained in this document. <u>Alcan Elec.</u>, 197 F. 3d at 1019 (9th Cir. 1999). This document, accordingly, is classified as "mere information." <u>A-1 Ambulance</u>, 2020 F. 3d at 1243.

**Exhibit D-22:** On its face, this document appears to be the agenda and attendee list for a conference entitled "Medicare Disproportionate Share Workshop" that was held in SeaTac on March 11, 1998. This document does not appear to be a publication and it is not authenticable under 901(b)(4) by comparison to the Declaration of Janet Russell at ¶7, where she discusses the occurrence of this conference, but admits that she did not attend this conference and thus has no personal knowledge as to the authenticity of this document. For this reason, the document is not a proper one for the Court's consideration.

**Exhibit D-30:** This document appears to be a copy of a memo of some sort authored by Claudia Sanders. On the face of the document it states that it was sent to DSH Medicare Hospitals and a list of recipients' names is attached. It is impossible to tell from the face of the document how and when this document was sent. The document is not signed. This document does not qualify for any of the modes of self-authentication provided in Fed. R. Evid. 902. This document also does not appear authenticable on the basis of its distinctive characteristics under FRE 901(b)(4) because there are not many contextual clues on the face of the document that allow the Court to rely on the fact that this document is what it purports to be. Additionally, Defense affiant Janet Russell provides no testimony regarding the creation of this document.

Beyond the authentication problems with this document, the Court does not find that this memo can be considered a public disclosure under the statute because it does not meet the X + Y = Z test. One cannot ascertain from the face of the document that PBC had allegedly been involved in activities constituting fraud. Instead, the document discusses strategies that seem to be put forth by

Premera for how disproportionate share hospitals ("DSH Hospitals")[1] can come into compliance with new regulations.  For these reasons, this document cannot form the basis for dismissing any of Relator Parikh's claims.

**Exhibit D-31:** This document appears to be a copy of email strings sent between Claudia Sanders and various other individuals between September 1, 2000 and October 23, 2000.  The emails address the issue of the Health and Human Services' ("HHS'") settlement of overpayments with DSHs.  Although these documents might potentially be authenticable on a "distinctive characteristics" theory, no information has been provided to the Court regarding the circumstances under which these documents were created. Aside from the authentication problem, the Court cannot find that these documents constitute "public disclosures" under the meaning of the statute.  Defendant has provided no evidence that this document was publicly disclosed through one of the sources outlined in the statute (i.e. agency report, hearing, media, etc.).  Moreover, the emails do not appear to divulge any information that would lead one to believe that PBC was committing fraud.  In other words, this document does not meet the X+Y = Z test.

**Exhibit D-32:**  Document D-32 is subdivided into D-32A and D-32-B.  D-32A is an email authored by Peggi Shapiro discussing how Premera and HCFA were working with hospitals who were late in filing their reports. D-32B is an agenda for a meeting to be held to discuss these issues.  Both documents suffer from the authentication problems discussed above in reference to Exhibit D-31.  There is also no evidence that these documents were ever disclosed through one of the statutory channels–agency reports, government hearings, media, etc.  Finally, there is no information in this document that would lead the government to initiate an investigation against PBC.  For these reasons, the Court will not dismiss Counts I-III on the basis of this document.

---

[1]This acronym denotes hospitals that have a disproportionate share of indigent clients using Medicare and Medicaid, as compared to other hospitals.

**Exhibit D-34:** This document appears to be an excerpt of the record of a hearing before the House Subcommittee on Oversight and Investigations. The document is entitled: "Abuses of the Medicare Partial Hospitalization Benefit at Community Mental Health Centers." Although Plaintiff continues to object to the use of excerpts by Defendant, the Court will not penalize the Defendant for this practice, which has made its review of multiple lengthy documents somewhat manageable. The document is self-authenticating as a government publication under FRE 902(5).

This document seems to fall squarely into what the statute anticipates may be used as a public disclosure because it is the record of a congressional hearing dealing with fraud. Here, the fraud discussed is that of community mental health centers (CMHCs) rather than Medicare fiscal intermediaries such as PBC. This document references an Inspector General's audit that uncovered the fact that Community Mental Health Centers ("CMHCs") were submitting claims that were 90% fraudulent. The excerpt of the hearing submitted to the Court only discusses this problem on an industry-wide level and does not disclose which region was audited. This document also does not implicate fiscal intermediary organizations, focusing instead on fraud within the CMHCs. For these reasons, the Court finds that this document is not a "public disclosure" under the meaning of 31 U.S.C. §3730(e)(4)(A) because this document would not form a sufficient basis for launching an inquiry into PBCs practices under <u>Found. Aiding</u>, 265 F. 3d at 1015.

**Exhibit D-36:** This document appears to be a press release by HCFA ("Health Care Financing Administration")on September 29, 1998, entitled "Medicare Expands Crackdown on Waste, Fraud, and Abuse in Community Mental Health Centers." This document is self-authenticating as a government publication under FRE 902(5).

This document puts forth similar allegations against CMHCs as those discussed above in reference to Exhibit D-34. As noted above, information regarding fraud on the part of CMHCs alone does not qualify as a "public disclosure" under 31 U.S.C. §3730(e)(4)(A) concerning Premera and Mr.

ORDER on 12(b)(1) - 12

Parikh's allegations.  There is no indication in this document that fiscal intermediaries such as PBC were thought to be engaging in fraudulent activity.  For this reason, the Court finds that this document qualifies only as "mere information." <u>A-1 Ambulance</u>, 2020 F. 3d at 1243.

**Exhibit D-37:** This document is a GAO report from January 2000, entitled "Medicare: Lessons Learned from HCFA's Implementation of Changes to Benefits."  This document is self-authenticating under FRE 902(5).

This document also addresses the fraudulent CMHC claims issue.  The opening page of this document states that, "dishonest or unknowing providers have submitted claims for inappropriate services, unknowledgeable contractors have processed these claims, and HCFA has sometimes paid out more than it should." (Ex. D-31 at 1).  The question here, as with the other previous documents that deal with the CMHC issue, is whether or not the document sufficiently implicated individual contractors such that a government investigation into PBC could have been commenced.  The entire tone of this document tends to diminish any blame as to the contractors and seems to insist that they were unaware of the fraud taking place at the CMHC level.  Additionally, the document appears to also apportion blame to HCFA, who it states should have provided more training to contractors and more monitoring of the new partial-care mental health program. (<u>Id</u>. at 6). For these reasons, the Court finds that this document does not qualify as a "public disclosure" under 31 U.S.C. §3730(e)(4)(A).

**Exhibits D-38 and D-39:** These documents are reports from HHS's Office of the Inspector General ("OIG") and are self-authenticating as government publications.

These documents, entitled "Five-State Review of Partial Hospitalization Programs at Community Mental Health Centers," and "Review of Partial Hospitalization Services Provided Through Community Mental Health Centers," respectively, also address the issue of fraudulent/inappropriate claims submitted by CMHCs.  As a statutory "public disclosure" these

documents suffer from the same weaknesses that characterized the GAO report submitted as document D-37.  The five states reviewed in D-38 are Florida, Nebraska, Texas, Alabama, and Pennsylvania.  There is no mention of PBC and contractors are not blamed directly for the fraud.  Although D-39 recommends a larger role for contractors in reviewing CMHC claims, there is no suggestion that contractors have been behaving fraudulently.  For these reasons, the Court does not find that these documents constitute "public disclosures" and instead finds that they are better classified a "mere information."

**Exhibit D-41:**

This document appears to be a letter from Danilo Tabang, a consultant with Medicare Operations at Blue Cross Blue Shield Association, to Pamela Hinthorne, Premera Blue Cross' Appeals coordinator.  This document is not self-authenticating and cannot be authenticated by the Court on the basis of its "distinctive characteristics" because no information has been submitted regarding the circumstances surrounding this particular document.  The Court also cannot find that this document constitutes a "public disclosure" under the statute at issue in this case because there is no evidence that this document was disclosed outside of the BCBSA system.  For this reason, this document is akin to the interoffice memo between two engineers that the Wang court rejected as a "public disclosure." 975 F. 2d at 1416.  Moreover, documents that *may* be disclosed under FOIA cannot be considered public disclosures unless there is evidence that they were disclosed previous to the qui tam action to an actual member of the public.  United States ex rel. Schumer v. Hughes Aircraft, 63 F. 3d 1512, 1519-20 (9th Cir. 1995) (vacated on other grounds).  Accordingly, the Court finds that Exhibit D-41 cannot form the basis for dismissing any of Mr. Parikh's causes of action.

**Exhibit D-47:** This document is entitled "Federal Managers' Financial Integrity Act Report to the President and Congress" and is self-authenticating as a governmental publication under FRE 902(5).

ORDER on 12(b)(1) - 14

1   This document, however, does not qualify as a "public disclosure" under 31 U.S.C.

2   §3730(e)(4)(A).  The excerpt submitted by Defendant only speaks very generally about Fiscal

3   Intermediaries' ("FIs") failure to collect money from primary payor insurance carriers under the

4   Medicare Secondary Payor ("MSP") program.  While Mr. Parikh alleges that PBC's failure to collect

5   under its MSP obligations constitutes fraud on the government, this document only speaks to the

6   problem broadly and does not satisfy the X+Y = Z test as to Defendant PBC.  <u>Found. Aiding</u>, 265 F.

7   3d at 1015. For this reason, the Court views this document as "mere information" that does not result

8   in a dismissal of any part of Mr. Parikh's case.

9       **<u>Exhibit D-48:</u>** This document is a report of HHS' OIG and is entitled "Corrective Action

10   Review of the Health Care Financing Administration's Medicare Payment Safeguards Program."  It is

11   a government publication under FRE 902(5) and is self-authenticating.

12       This document details weaknesses in the MSP program, especially contractors' failure to

13   identify and collect overpayments from primary payors.  This document, however, does not blame this

14   failing on fraudulent activity on the part of the contractors, but rather notes that contractors have been

15   underfunded and so did not have the ability to meet these obligations. (Ex. D-48 at 1, 8-9 & 11).  For

16   this reason, the Court does not find that this document can meet the X+Y = Z analysis because it does

17   not disclose the elements of fraud such that the government could start an investigation as to PBC.

18   <u>Found. Aiding</u>, 265 F. 3d at 1015.

19

20       **<u>Exhibit D-56:</u>** This document is a GAO report entitled "Medicare Contractors: Despite Its

21   Efforts, HCFA Cannot Ensure Their Effectiveness or Integrity."  This document is dated July 1999

22   and is self-authenticating under FRE 902(5) because it is a government publication.

23       This document addresses concerns regarding the MSP program, stating, "[t]he potential for

24   contractor fraud regarding MSP activities is significant because of an inherent conflict of interest: the

25   private insurance business of the contractor can be the primary payer [sic] for some claims subject to

26   ORDER on 12(b)(1) - 15

1   the MSP provisions." (Ex. D-56 at 32).   Despite this pointed statement, the Court finds that this does

2   not constitute a "public disclosure" within the meaning of the statute because such a general statement

3   would not have provided enough information to the government to initiate an investigation of PBC.

4   Later in the document, the failure of certain fiscal intermediaries' fraud units is briefly discussed,

5   though the report recognizes that other fiscal intermediaries have units that are conducting numerous

6   investigations.   The document also finds fault with HCFA's own fiscal intermediary evaluation

7   system. (Id. at 33).  This information is extremely generalized and appears to be targeted at the

8   industry as a whole.  In relation to allegations aimed specifically at PBC, this report can only be

9   classified as "mere information" because it does not provide any information upon which the

10   government could base an investigation of PBC.

11        **Exhibit D-57:** This document is a report by HHS entitled, "Accountability Report: Fiscal Year

12   1997."  This document is self-authenticating as a government publication under FRE 902(5).

13   However, it does not fit the statutory definition as to "public disclosure" of the transactions and

14   allegations underlying Mr. Parikh's claim.  Although this document discusses the shortfalls in the MSP

15   program, it does so only in a very general sense and attributes failure to collect more money under this

16   program to the lack of a central primary payor identification and collection unit, as well as to

17   unfavorable court decisions. (Exhibit D-57at 742). While the document also discusses generally the

18   fact that some contractors cannot meet the requirements of the Chief Financial Officers Act, it does so

19   in an industry-wide context. (Id. at 745). For these reasons, the Court views this document as "mere

20   information" and not as a document upon which the government could base an investigation into

21   Premera's alleged fraudulent practices.

22        **Exhibits D-58 and D-59:** These documents are excerpts of HHS's Accountability Report for

23   Fiscal Years 1998 and 1999.  Both reports are self-authenticating as government publications under

24   FRE 902(5).

26   ORDER on 12(b)(1) - 16

1    Exhibit D-58 references a sample of twelve contractors that it studied in the course of the

2    FY1998 audit and states that all twelve of these contractors had severe deficiencies in the way they

3    tracked accounts receivable and the way the MSP programs were pursued. (D-58 at V-5).  Although

4    this is a severe allegation, it is not clear that PBC was one of the contractors sampled in this audit.

5    Where this document focuses on MSP problems, it does so in a generalized, industry-wide way.  For

6    this reason, the Court finds that this document does not meet the $X+Y = Z$ test as to PBC because its

7    allegations are too generic and could not serve as the basis for an investigation into PBC's practices.

8    Similarly, D-59 states that "[c]ontractors did not always follow HCFA policies. . ." with regard

9    to financial reporting in the MSP and accounts receivable programs. (Ex. D-59 at 9).  However, this

10    criticism is extremely generalized and would not lead a governmental body to investigate PBC in

11    particular.  For this reason, the Court finds that this document is not a "public disclosure" and instead

12    only provides "mere information." A-1 Ambulance, 2020 F. 3d at 1243.

13                                        CONCLUSION

14    The Court finds that documents D-1, D-2, D-3, D-4, D-6, D-7, D-8, D-9, D-10, D-11, D-12,

15    D-13, D-15, D-16, D-17, D-18, D-21, D-23, D-24, D-25, D-26, D-27, D-28, D-29, D-33, D-40, D-

16    42, D-43, D-44, D-45, D-46, D-49, D-50, D-51, D-52, D-53, D-54 and D-55 were not properly

17    authenticated and could not, therefore, be considered by the Court.  Of the remaining documents

18    submitted by Defendant, the Court finds that none of these documents constitute a "public disclosure"

19    under the meaning of 31 U.S.C. §3730(e)(4)(A).

20

21

22

23

24

25

26    ORDER on 12(b)(1) - 17

1    Having made this finding, the Court does not reach the issue of whether or not Mr. Parikh

2 could be considered an original source of the information contained in the documents under the

3 statute.  For these reasons, the Court DENIES Defendant's motion.  None of the counts alleged by

4 Mr. Parikh will be dismissed on this motion.

5    The clerk is directed to send copies of this order to all counsel of record.

6    Dated: September 29, 2006.

7

8

9

10   Marsha J. Pechman
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER on 12(b)(1) - 18