Hon. Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Girish Parikh,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS, a Washington nonprofit corporation,<br><br>Defendant. | No. C-01-0476<br><br>SUBMISSION OF PREMERA BLUE CROSS IN RESPONSE TO COURT ORDER OF MAY 16, 2007 |

In response to the Court's May 16, 2007 Order (Dkt. 305) requiring the parties in this action to file a copy of their settlement agreement and/or declarations explaining why the settlement terms are reasonable, Premera Blue Cross ("Premera") states as follows:

1. On April 7, 2007, the Parties, Premera Blue Cross ("Premera") and Relator Girish Parikh, participated in a mediation under Local Civil Rule 39.1 with mediator Stew Cogan. The government also participated in the mediation through AUSA Peter Winn. Prior to the commencement of mediation, counsel for each Party, as well as AUSA Winn, signed a confidentiality agreement that provided the mediation would be confidential to the full extent of the law. At the conclusion of the mediation at approximately 10:30 p.m., the Parties reached



Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

a settlement and memorialized the key terms in a term sheet ("mediation term sheet"), which contemplated negotiation of a more formal settlement agreement. The Parties provided the mediation term sheet to the government because it was a participant in the mediation and in order for the United States Department of Justice to determine whether or not it would consent to the settlement and dismissal of the case, which the Parties had made one of the conditions of settlement. *See* Declaration of Karen F. Jones in Support of Approval of Settlement and Premera's Motion to Seal ("Jones Decl.") at ¶¶ 2, 5, filed separately.

2. On May 8, 2007, Relator and Premera executed a formal settlement agreement ("Settlement Agreement" or "Agreement"), which is submitted for the Court's review as Exhibit B to the Jones Declaration. Although Premera contended that the Settlement Agreement would be subject to an exemption from disclosure if requested under the Freedom of Information Act ("FOIA"), counsel for the Department of Justice would not opine on this point. For this reason, the Parties removed the settlement payment amount from the Settlement Agreement. Jones Decl. at ¶ 6.

3. As Premera explains below, the Court should now be in a position, having received this Submission and accompanying exhibits, to determine the reasonableness of the Parties' settlement without reference to the mediation term sheet and the settlement payment amount. The Court suggested such a possibility in its May 16 Order. The Court also acknowledged that Premera maintains the settlement terms were intended to be and should remain confidential. Therefore, should the Court ultimately deem it necessary to know the settlement payment amount, Premera is requesting that the Court review the mediation term sheet under seal. *See* accompanying Motion to Seal filed pursuant to Local Civil Rule 5(g). If the Court is persuaded that it need not review the mediation term sheet, Premera requests that the Court declare the Motion to Seal moot and order the return of the term sheet to Premera.

4. The Court can now confirm that the Settlement Agreement memorializes what the Parties have previously represented to the Court:

SUBMISSION OF PREMERA BLUE CROSS
IN RESPONSE TO COURT ORDER
OF MAY 16, 2007
NO. C-01-0476 – Page 2



Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

a. The settlement between Premera and Relator is a settlement of Relator's personal employment claim under Count IV. Relator agreed to dismiss his claim with prejudice in exchange for receipt of the settlement amount from Premera, and Premera denied any and all liability with respect to that Count. Exhibit B to Jones Decl., ¶¶ 4, 7. The settlement amount is within the parameters asserted by Relator's expert economist as an estimate of Relator's wage loss, purported special damages, attorneys' fees (which Relator's counsel represented during mediation to be something less than full fees), and costs. Jones Decl. at ¶ 6. The Settlement Agreement requires Premera to wire a portion of the settlement amount to Relator and the remainder to his counsel. Exhibit B to Jones Decl., ¶¶ 7.a., b.

b. The Settlement Agreement confirms that although Relator also agreed to dismiss his remaining claims under Counts II and III, he will receive no monies from Premera for doing so. *Id.*, ¶ 7. These two Counts (in contrast to Count IV) allege that Premera filed false claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Premera has consistently stated, as is reflected in the Settlement Agreement, that it will not settle or accept any liability for the FCA claims. Jones Decl. at ¶ 3. (Relator previously dismissed his Count I claims with prejudice, for which he also received no compensation. *See* Stipulation of Dismissal (Dkt. # 267.))

In addition to releasing his claims against Premera, and as discussed below in greater detail, Relator agreed as part of the settlement to waive any claims he might have to a share of any payment the United States might receive from Premera as part of a pending administrative settlement referenced in Section 6 below, which is separate from this FCA action. *See* Dkt. # 267. Therefore, if Premera and the United States reach an administrative settlement, Relator will not participate in that recovery.

c. Another material term of the Parties' settlement, for which consideration was included in the settlement amount, was confidentiality. As confirmed by the Settlement Agreement, confidentiality of its terms, particularly the settlement amount, was a critical

SUBMISSION OF PREMERA BLUE CROSS
IN RESPONSE TO COURT ORDER
OF MAY 16, 2007
NO. C-01-0476 – Page 3



Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

condition of settlement for Premera. Paragraph 11 states that Relator "understands and acknowledges that the confidentiality provisions in this Paragraph 11 are of great importance to Premera and are one of the bases upon which this Agreement is premised." Exhibit B to Jones Decl. The Parties' representation and acceptance of the confidentiality of the settlement amount in that paragraph (*e.g.*, "Parikh and his undersigned counsel agree . . . not [to] disclose or characterize the terms, conditions, and subject matter of this Agreement, including the amount of the settlement . . . .") was a precondition of Premera's approval of the settlement. Jones Decl. at ¶¶ 3, 4. Should the settlement amount now be disclosed to the Court without the protection of a seal, one of the acknowledged conditions precedent to settlement would not be met and the settlement itself would fail.

As explained further in Premera's Motion to Seal, in an effort to provide the Court with the information it needs to approve the Parties' settlement, and mindful of the strong presumption of public access to the Court's files, Premera seeks to protect only the most highly confidential settlement information – the settlement amount. Accordingly, Premera is requesting that the mediation term sheet, which states the settlement amount, be sealed. This request is in accord with the District Court's recent decision in *Christensen Shipyards, Ltd. v. St. Paul Fire & Marine Ins. Co.*, No. C06-0641-JCC, slip op. at 1 (W.D. Wash. Feb. 16, 2007), which held that "[b]y protecting the confidentiality of the settlement amount and attorney mediation notes, the court promotes the public's trust in mediation as an effective means to solve disputes through alternative dispute resolution procedures. This policy outweighs the public's right to access the information regarding the mediation and the settlement amount."

    d.    The United States, understanding that Relator is not receiving any FCA proceeds – only money under Count IV – has consented to dismissal of this action. Dkt. # 267. This consent makes good sense. The United States has never claimed any right to any portion of the settlement proceeds. Moreover, it previously informed the Court it intended to nonsuit the FCA counts.

SUBMISSION OF PREMERA BLUE CROSS
IN RESPONSE TO COURT ORDER
OF MAY 16, 2007
NO. C-01-0476 – Page 4



Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

5. The fact that Relator is not receiving any FCA proceeds and the lack of any objection by the United States should be critical factors in the Court's determination of whether the settlement is reasonable. The settlement of this case is distinguishable from the FCA settlements cited by the Court in its May 16 Order. In both *United States ex rel. Killingsworth*, 25 F.3d 715, 722 (9th Cir. 1994), and *United States ex rel. Sharma v. Univ. S. Cal.*, 217 F.3d 1141, 1143 (9th Cir. 2000), the defendant paid monies to the relator for *both* the FCA claims and the employment claims in exchange for dismissal of all claims with prejudice. For this reason, there was a dispute among the parties, including the government, as to whether the division of monies between the FCA claims and the employment claims was reasonable and in accordance with the law; both the relator and the government received a share of the FCA proceeds. Of particular note, in *Sharma*, the government argued that the settlement proceeds paid to the relator for dismissal of his FCA claims were too high because they included attorneys' fees; thus, the government was seeking a larger share of the FCA proceeds for itself. Similarly, in *Killingsworth*, the government objected to the settlement because the larger portion of settlement proceeds was attributed to dismissal of the employment claim, thus diluting the government's share of the FCA proceeds. Because there are no FCA proceeds to be paid by Premera under Count IV, and because the government has no objection to the amount of money to be paid Relator, the settlement is reasonable.

6. At the conclusion of mediation, when all issues between Relator and Premera were resolved, there remained one outstanding matter to be resolved between Premera and the United States regarding certain alleged Medicare mistaken primary payments ("MMPPs"). As the Court correctly stated in its May 16 Order, Premera and the United States are currently pursing settlement of this MMPP matter through an administrative settlement – not through an FCA action. Earlier this month the United States represented in its Motion for Extension of Time to respond to the Settlement Agreement that the Centers for Medicare and Medicaid Services ("CMS") was prepared to recommend a proposed administrative settlement with

SUBMISSION OF PREMERA BLUE CROSS
IN RESPONSE TO COURT ORDER
OF MAY 16, 2007
NO. C-01-0476 – Page 5



Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

Premera for such claims. *See* Dkt. # 296. Consistent with the stated policy of the Department of Justice, any sums paid in such an administrative settlement "should not be considered as FCA proceeds." *See* United States Post-Hearing Submission in *United States ex rel. Alderson v. Quorum Health Group, Inc.*, 2001 WL 34896508 (June 8, 2001), attached as Exhibit C to Jones Decl. Thus, because any outstanding resolution of the MMPP matter will not involve FCA proceeds, it should not prevent the Court from dismissing this action. This is especially true because Relator has waived any right he may have had to a share of any MMPP payments by Premera. Exhibit B to Jones Decl., ¶ 6.

7. It has been Premera's consistent position throughout this lawsuit that the MMPP issue now being discussed with the United States was not pled by Relator in his complaint or amended complaint. Rather, Premera, not Relator, discovered the issue through an independent internal review and first brought it to the attention of CMS in a series of letters in 2004, followed by a meeting with CMS in January 2005, and then in no fewer than seven offers by Premera to continue that dialogue and resolve the issue, all of which went unanswered until last month. *See* Declaration of Katharine Cramer, Exhibit 5 to Premera's Opposition to Relator's Motion for Summary Judgment on Count II (Dkt. # 282). For this reason, Premera has vigorously opposed the efforts of Relator this past year to add the MMPP issue to his suit and has refused to pay any sum attributable to it in the Settlement Agreement. Similarly, in asking to review the Settlement Agreement, the United States informed Premera that it wanted to ensure that Relator was not seeking any share of any monies that ultimately may be paid by Premera through administrative settlement. Jones Decl. at ¶ 9. Relator makes that precise representation in the Settlement Agreement at ¶ 6. Exhibit B to Jones Decl. The resolution of the MMPP matter thus should not influence the Court's approval of the settlement between Relator and Premera.

SUBMISSION OF PREMERA BLUE CROSS
IN RESPONSE TO COURT ORDER
OF MAY 16, 2007
NO. C-01-0476 – Page 6

Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

For the reasons stated above, Premera respectfully requests that the Court declare the settlement between Premera and Relator to be reasonable and accordingly, approve the dismissal of this action.

Dated, this 21st day of May, 2007.

Respectfully submitted,

WILEY REIN LLP

By: _____
Kathryn Bucher, DCBA # 375614
Barbara Van Gelder, DCBA # 265603
Wiley Rein LLP
1750 K Street, NW
Washington, DC 20006
Telephone: 202.719.7032
Fax: 202.719.7207
E-mail: kbucher@wileyrein.com

Harold A. Malkin, WSBA # 30986
Yarmuth Wilsdon Calfo, PLLC
The IDX Tower
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Telephone: 206.516.3872
Fax: 206.516.3888
E-mail: hmalkin@yarmuth.com

Karen F. Jones, WSBA # 14987
Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154-1065
Telephone: 206.624.3800
Fax: 206.389.1708
E-mail: kjones@riddellwilliams.com

Attorneys for Defendant Premera Blue Cross

SUBMISSION OF PREMERA BLUE CROSS
IN RESPONSE TO COURT ORDER
OF MAY 16, 2007
NO. C-01-0476 – Page 7



Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006