UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* Girish Parikh, | No. C-01-0476 |
| Plaintiff, | Memorandum in Support of Settlement in Response to the Court's Order (Dkt. #305) |
| v. | |
| PREMERA BLUE CROSS, a Washington non-profit corporation | Note on Motion Calendar May 21, 2007 |
| Defendant. | |

Memorandum in Support of Settlement in Response to the Court's Order (Dkt. #305)
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois  62959
T (618) 998-9988 F (618) 998-0796

1    Relator hereby files the attached declarations of the Relator, Girish Parikh and his lead

2    counsel, Timothy Keller, Esq., pursuant to this Court's Order (Dkt. 305) directing the parties

3    address the reasonableness of the settlement reached in this matter.  In that Order, this Court

4    required:

5        The parties shall file a copy of their settlement agreement and/or declarations
         explaining why the settlement terms are reasonable with the Court no later
6        than Monday, May 21, 2007.  If the parties wish to have the settlement
         agreement and/or declarations reviewed under seal, they may file a motion to
7        seal by following the provisions of Local Civil Rule 5(g).

8    Dkt. 305, p. 4.

9        Relator notes that Premera has already filed with this Court the settlement agreement (*See*

10   Exhibit B to Declaration of Karen F. Jones in Support of Approval of Settlement and Motion to

11   Seal (Dkt #307)) as well as the April 7, 2007, confidential Mediation term sheet prepared and

12   executed by the parties immediately at the conclusion of the 13 hour mediation (*See* Dkt #310).

13   Therefore, there is no need for Relator to file either of these documents.

14       Relator notes that Premera has filed the Mediation term sheet under seal[1].  This is

15   consistent with Premera's agreement with Relator (See ¶ 11 of the Settlement Agreement,

16   Exhibit B to Dkt #307), the confidentiality agreement executed by the Parties (Attached to

17   Dkt. 310), Fed. R. Evid. 408, and also C.R. 39.1(a)(6) upon which this Mediation was

18   convened, which provides:

19

20       *Confidentiality*.  Except as otherwise required by law or agreed by the
         litigants, or otherwise provided by this rule, **all ADR proceedings under this**
21       **rule, including communications, statements, disclosures and**

22   _____

[1] Relator understands that the United States has communicated its intention to object to the sealing of any
23   documents in this matter. Any such dispute between the United States and Premera regarding the propriety of
     sealing documents is collateral to the reasonableness of the proffered settlement presented here and the outcome of
24   that dispute has no bearing on the reasonableness of the settlement between Relator and Premera. As such, Relator
     requests that the Court treat this issue as it would a post-dismissal motion and dismiss this action without respect to
25   that remaining issue.

26

27

28

Memorandum in Support of Settlement in Response to the Court's Order (Dkt.
#305) – Page 1
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois  62959
T (618) 998-9988 F (618) 998-0796

**representations made by any party, attorney or other participant in the course of such proceeding, shall in all respects, be confidential, and shall not be reported, recorded, placed in evidence, disclosed to anyone not a party to the litigation, made known to the trial court or jury,** or construed for any purpose such as an admission or declaration against interest. No party shall be bound by anything done or said during such proceedings unless a settlement or other agreement is reached.

*(Emphasis Added).*

The settlement is contingent on three events: 1) Execution by the Department of Justice of a stipulation and order of dismissal with prejudice as to Relator and without prejudice as to the United States by May 9, 2007; 2) The Court's dismissal of the Lawsuit (Counts II through IV) with prejudice as to the Relator and without prejudice as to the United States with respect to Counts II through III; and 3) The Parties' and undersigned counsel's execution of the Agreement. (*See* ¶ 9 of the Settlement Agreement, Exhibit B to Dkt #307 Currently, all contingencies except number 2, dismissal of the action, have been satisfied.

The attached Declaration of Relator, Girish Parikh, establishes that he is satisfied with the settlement and wishes to end the litigation (¶ 6 of Girish Parikh's Declaration, attached hereto as Exhibit 1). He also specifies that he is pleased with the services of his counsel and agrees to the recovery of their incurred costs as well as their receipt of their negotiated discounted attorneys' fees (¶ 7 of Exhibit 1).

Proof of liability for Mr. Parikh's retaliatory discharge claim was abundant (see Motion for Summary Judgment on Count IV, Dkt. # 229, Premera's response, Dkt. # 269, and Relator's Reply Dkt. # 278). Dr. Mathur, our expert economist retained to testify on Mr. Parikh's economic damages, indicated in his report and testimony (Exhibit A of Attorney Keller's Declaration, attached hereto as Exhibit 2) that Relator's back pay damages were $491,764 (subject to doubling under 31 U.S.C. § 3730(h) to $983,528) and that Relator's front pay losses were $730,889. Based on Dr. Mathur's findings, Mr. Parikh was entitled to $1,714,417 for his economic loss alone. In addition, Mr. Parikh was entitled to "special

Memorandum in Support of Settlement in Response to the Court's Order (Dkt. #305) – Page 2
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois 62959
T (618) 998-9988 F (618) 998-0796

1  damages" under § 3730(h) consisting of non-economic losses for the emotional damage

2  suffered by our client.  (¶ 3 of Keller Declaration).

3      During the eight years spent on this case by four different firms, and sole practitioner

4  local counsel, the attorneys' fees were substantial.  This was necessitated in part by the

5  extensive and zealous legal representation of Defendant, which involved no less then five

6  separate large national and international law firms.  Although Relator's counsel's

7  representation began in 2000, the vast majority of Relator's attorneys' fees and costs were

8  incurred since the unsealing of the case during the extensive discovery and successful motions

9  practice of Relator necessitated by the Defendant's positions.

10      The mediation involved aggregate offers and counter-offers, which were not broken

11  down separately into fees or payments to Mr. Parikh.  What drove the negotiations from

12  Relator's Counsels' perspective, however, was our client's expressed goal that he receive a

13  Net Settlement Amount. (*See* ¶¶ 3, 4 and 5 of Parikh Declaration). Discounts and reductions in

14  Relator's counteroffers were comprised of reductions in attorneys' fees, all done in the

15  presence of and with the consent of Relator.

16      The Settlement Agreement provides that Relator's False Claims Act and retaliation

17  claims are to be dismissed with prejudice while the claims of the United States will be

18  dismissed without prejudice (*See* ¶ 10 of Settlement Agreement, Exhibit B of Docket 307).

19  The parties contemplated such a dismissal of the United States because the United States

20  indicated to the parties during the mediation that it did not view the actions of Premera as

21  amounting to a False Claims Act violation but did believe that there was an overpayment of

22  MSP funds by Premera.  (¶ 6 of Keller Declaration).

23      During the course of the mediation it became clear that Premera had two main

24  conditions to settlement:  (1) Relator's agreement to hold the settlement confidential, to which

25  Relator agreed; and, (2) it would not agree to pay a "False Claims Act" settlement.  (¶ 7 of

26  Keller Declaration).  Thus, in the course of the mediation, Premera and AUSA Pete Winn

27

28

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois  62959
T (618) 998-9988 F (618) 998-0796

1   indicated they would attempt to settle the United States claims through separate administrative

2   negotiations involving CMS personnel.  If that administrative negotiation was unsuccessful,

3   the United States indicated it would then proceed against Premera under contract and unjust

4   enrichment causes of action—causes of action that Relator is not empowered to bring on

5   behalf of the United States.  (¶ 8 of Keller Declaration).  As described in the settlement

6   agreement and as promised by Relator during the negotiations, Relator waived his claim to

7   any alternate remedy share of any consideration paid by this administrative recovery under 31

8   U.S.C. § 3730(c)(5).  (*See* ¶ 6 of Settlement Agreement, Exhibit B of Dkt. 307; ¶ 3 of Parikh

9   Declaration).

10      Relator's receipt of settlement proceeds clearly pertains to resolution of his § 3730(h)

11   retaliatory discharge claim and the attorneys fees and expenses he incurred in prosecuting that,

12   and other related False Claims Act claims. To the extent that Relator received fees which

13   could be perceived to be more closely associated with the *qui tam* allegations, these

14   allegations are inextricably linked and related to the § 3730(h) claim.[2]  To maximize a

15   recovery under his False Claims Act retaliation claim, it was necessary, from Relator's

16   counsel's perspective, to prove that Premera was motivated to fire Relator because of the False

17   Claims Act violations that he complained about.  Thus, it was necessary to prove that the

18   alleged False Claims Act fraud was actually committed by Premera.  Under the facts

19   presented, Relator's counsel perceived that a jury would be substantially less sympathetic to

20   Relator's retaliatory discharge case where no actual fraud had been demonstrated.  (*See* ¶ 10 of

21   Keller Declaration).

---

[2] *See e.g. Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1122-1123 (9th Cir. 2006)( Pregerson, J. concurring)(relying on *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and recognizing that where work performed in pursuit of related claims is inseparable, compensation for successful and unsuccessful claims is appropriate); *see also U.S. ex rel Lincoln v. Med Data*, p. 8 of 9, cause no. C03-3834P (W.D. Wa., Sept. 8, 2006, Dkt. 53)(Order denying in part Defendant's Motion to Bifurcate Relator's personal claim from the qui tam action since the "claims also overlap.")

Memorandum in Support of Settlement in Response to the Court's Order (Dkt.
#305)  – Page 4
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois  62959
T (618) 998-9988 F (618) 998-0796

1    Second, though the Relator has agreed to dismiss Counts II through IV with prejudice,

2 he specifically required that the dismissal to the United States be *without* prejudice under

3 circumstances where the United States affirmatively asserted that it would protect its own

4 interests and has since done so by administratively settling with Premera.  (¶¶ 11 and 12, of

5 Keller Declaration).  The United States suffers no prejudice under the proposed settlement and

6 there can be no serious question that the Relator adequately represented the government's

7 interests in this litigation.[3]  Since the United States is being paid nothing for the *qui tam* False

8 Claims Act allegations in Counts II and III, the defendant is not entitled to receive a dismissal

9 with prejudice by the Government.  Thus, with respect to the United States, the dismissal of

10 the *qui tam* False Claims Act allegations should be "without prejudice."

11    Were it not enough to further Relator's discharge claim by incurring fees and expenses

12 related to the *qui tam* action, the United States itself has acknowledged that its pending

13 administrative claims against Premera, which have been tentatively resolved, benefited

14 immensely from the work product of Relator's counsel. Solely through the efforts of Relator's

15 counsel, the United States found itself in the envious position of possessing *all* of Premera's

16 previously-asserted privileged documents relating to Defendant's calculations, discussions

17 between internal and external counsel, and internal strategic discussions against the United

18 States, without having expended any taxpayer resources.  (*See* Court's Orders granting

19 Relator's Motions to Compel, Dkts. 264, 265, and 266).  Thus, in the present case where

20 Relator has already declined a Relator's share in a certain administrative future recovery from

21 Premera, the United States was enriched by – yet is paying nothing for – Relator's counsels'

22 efforts.

23

24    ---

[3] For instance, in addition to obtaining the evidence previously provided to DOJ, Relator's Counsel was successful
25 in establishing very favorable precedent within the 9th circuit on the rejection of the 11th Circuit *Body* statutory
immunity defense to Medicare Contractors (Dkt. #132) and establishing a ten year Statute of Limitations in non-
26 intervened actions (Dkt. # 287).

27

28

1    Lastly, an additional basis now exists in support of Relator's counsels' entitlement to

2  fees and expenses.  Because the United States has now settled the MSP allegations contained

3  in Count II of the complaint with Premera through an administrative "alternative remedy", 31

4  U.S.C. § 3730(c)(5) specifically provides that Relator is entitled to the "same rights" as under

5  the False Claims Act.  (*See* ¶ 12, of Keller Declaration).  Of course, these rights include

6  Relator's entitlement to "receive an amount for reasonable expenses which the court finds to

7  have been necessarily incurred, plus reasonable attorneys' fees and costs."  31 U.S.C.

8  §3130(d)(1).  As explained earlier, Relator has expressly waived this claim as part of this

9  settlement.

10    We believe that after reviewing the facts of this case, the relevant legal precedent, and

11  considering the Relator's agreement to forego any claim for a Relator's share, the Court will

12  agree that Relator's settlement is reasonable and dismiss this action as requested.  The best

13  evidence of this is the fact that it is unopposed.  The United States is satisfied.  Premera is

14  satisfied.  And the Relator is satisfied.

15    If after reviewing the parties' submissions, the Court determines it cannot yet dismiss

16  this action, Relator respectfully urges the Court to schedule a status conference at its earliest

17  convenience to permit the parties to provide additional information that the Court deems

18  necessary.

19    Dated this 21st day of May 2007, at Marion, Illinois.

20                                    Respectfully Submitted,

21

22                                    _____/s/ Timothy Keller_____
                                     Timothy Keller (Illinois Bar # 6225309)
23                                    ASCHEMANN KELLER LLC
                                     108 West Jackson St.
24                                    Marion, Illinois  62959
                                     Telephone:  (618) 998-9988
25                                    Facsimile:  (618) 998-0796
                                     E-mail:  tkeller@quitamlaw.org
26

27

28

David S. Vogel, WSBA # 13672
2025 First Avenue
Penthouse Suite A, 13th Floor
Seattle, Washington 98121
Tel. (206) 622-2573
E-mail: dvogel@davidvogel.com

James B. Helmer, Jr., OHSBA #0002878
Paul B. Martins, OHSBA #0007623
Julie Webster Popham, OHSBA #0059371
Helmer, Martins, Rice&Popham Co., L.P.A.
600 Vine Street
Suite 2704
Cincinnati, Ohio 45202

*Attorneys for Relator, Girish Parikh*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum in Support of Settlement in Response to the Court's Order (Dkt.
#305) – Page 7
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois 62959
T (618) 998-9988 F (618) 998-0796

Hon. Marsha J. Pechman

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
10      WESTERN DISTRICT OF WASHINGTON

11  | UNITED STATES OF AMERICA, *ex rel.* | No. C-01-0476
12  | Girish Parikh, |
13  | Plaintiff, | Declaration of Girish Parikh in Support of
    |            | the Memorandum in Support of Settlement
14  | v. | in Response to the Court's Order (Dkt. #305)
15  | PREMERA BLUE CROSS, |
    | a Washington non-profit corporation |
16  | Defendant. |
17

18      GIRISH PARIKH declares as follows:

19      1. I am the Relator in this action. I am over the age of 18 and competent to testify as to

20  the information contained herein based on my personal knowledge.

21      2. I was present for, and participated in, the mediation which occurred on April 7, 2007.

22  All of the negotiations were accomplished in my presence and all offers or counter-offers were

23  made with my consent.

24      3. Prior to, and during, the mediation, I told my lawyers that my goal was to receive a

25  net settlement amount, which I understood to be what I would receive after payment of

26  attorneys' fees, expenses and costs (hereafter "Net Settlement Amount"). I also agreed to

27
28

Declaration of Girish Parikh in Support of the Memorandum in Support of
Settlement in Response to the Court's Order (Dkt. #305) - Page 1
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois 62959
T (618) 998-9988 F (618) 998-0796

Exhibit

1

1   waive any claim to any alternate remedy share under 31 U.S.C. § 3730(c)(5) of any

2   consideration paid by Premera to the United States, whether through administrative negotiations

3   or otherwise. My lawyers negotiated with this specific goal in mind.

4       4. All settlement negotiations were conducted with the assurance that I would receive

5   the Net Settlement Amount. Any discounts or reductions in Relator's counteroffers consisted of

6   reductions in attorneys fees.

7       5. If the Court dismisses this action, I will receive the Net Settlement Amount I sought

8   at mediation.

9       6. In light of the damages I would have attempted to prove at trial, I am pleased with the

10   settlement obtained and believe that it represents a reasonable compromise and resolution for all

11   involved.

12       7. Although my attorneys devoted a substantial amount of time and resources in this

13   case, they nonetheless substantially reduced their fees in order to obtain this settlement. I

14   believe my attorneys have earned the fees they will receive in this proposed settlement and are

15   entitled to reimbursement of their costs.

16       8. My preference is that the terms of settlement remain confidential. If the law allows it,

17   I would like the Court to seal the documents reflecting settlement amounts.

18       I declare under penalty of perjury under the laws of the United States that the foregoing is

19   true and correct to the best of my knowledge, information, and belief.

20       Dated this 21st day of May 2007, at San Francisco, California.

21                  Respectfully Submitted,

22

23                  Girish Parikh, Relator

24

25

26

27

28

Declaration of Girish Parikh in Support of the Memorandum in Support of
Settlement in Response to the Court's Order (Dkt. #305)  - Page 2
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois 62959
T (618) 998-9988 F (618) 998-0796

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* Girish Parikh,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS, a Washington non-profit corporation<br><br>Defendant. | No. C-01-0476<br><br>Declaration of Timothy Keller in Support of the Memorandum in Support of Settlement in Response to the Court's Order (Dkt. #305) |

TIMOTHY KELLER declares as follows:

1. I am counsel of record for the Plaintiff in this matter. I am over the age of 18 and competent to testify to the information contained herein based on my personal knowledge.

2. Attached hereto as Exhibit A is a true and accurate copy of the written report of Dr. Iqbal Mathur, Ph.D., an expert economist retained by Relator to testify as to Relator's economic damages.

3. Relator was seeking "special damages" under § 3730(h) consisting of non-economic losses for the emotional damages he suffered.

Declaration of Timothy Keller in Support of the Memorandum in Support of
Settlement in Response to the Court's Order (Dkt. #305) - Page 1
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois 62959
T (618) 998-9988 F (618) 998-0796

Exhibit
2

4. Relator's counsel began working with Mr. Parikh in 2000. Since that time, four different law firms and a sole practitioner local counsel have worked on behalf of Relator on this matter.

5. Since 2000, Defendant has been represented by five large law firms, two of which have offices in Washington D.C., two of the firms were located in Seattle, Washington, and other has offices both nationwide and around the globe. They include Riddell Williams P.S., Crowell & Moring LLP, Wiley Rein LLP, Yarmuth Wilsdon Calfo PLLC, and Sonnenschein Nath & Rosenthal LLP.

6. During the mediation, Assistant United States Attorney Peter Winn indicated to both Premera and Relator that the United States did not view the actions of Premera as amounting to a False Claims Act violation but did believe that there was an overpayment of MSP funds by Premera, which the government would be pursuing under its contract and unjust enrichment theories of recovery.

7. It was Relator's counsel's understanding that Premera had two material conditions to settlement: (1) Relator's agreement to hold the settlement confidential, to which Relator agreed; and, (2) it would not agree to pay a "False Claims Act" settlement.

8. In the course of the mediation, Premera and the United States, through AUSA Peter Winn, both stated they would attempt to settle the United States claims through a separate administrative claim and negotiations involving CMS personnel in Baltimore, Maryland. If that administrative negotiation was unsuccessful, the United States would then proceed against Premera under its own contract and unjust enrichment causes of action—causes of action that Relator is not empowered to bring on behalf of the United States.

9. As described in the settlement agreement and as promised by Relator during the negotiations, Relator has waived any claim to any alternate remedy share of any consideration paid by Premera to the United States whether resolved administratively or otherwise under 31 U.S.C. § 3730(c)(5).

Declaration of Timothy Keller in Support of the Memorandum in Support of
Settlement in Response to the Court's Order (Dkt. #305) - Page 2
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois 62959
T (618) 998-9988 F (618) 998-0796

1      10. The discounted fees and costs received by Relator's counsel from Premera under the

2    Settlement Agreement were inextricably linked to Relator's claim under 3730(h).  Relator

3    would have proceeded in pursuing the same issues during the litigation even if False Claims

4    Action counts were not involved in preparation for trial.

5      11. The Department of Justice informed Relator that it would protect the United States'

6    interests by pursuing the overpayments against Premera identified by Relator during the course

7    of discovery.

8      12. It is my understanding that the Government's April 25, 2007, negotiations with

9    Premera were successful and Premera agreed to repay a negotiated amount of the overpayments

10   that were the subject of Relator's Motion for Summary Judgment (Dkt. # 232) to the United

11   States.

12     I declare under penalty of perjury under the laws of the United States that the foregoing is

13   true and correct to the best of my knowledge, information, and belief.

14     Dated this <u>21st</u> day of May 2007, at Marion, Illinois.

15                  Respectfully Submitted,

16

17                  _____/s/ Timothy Keller_____
                      Timothy Keller

18

19

20

21

22

23

24

25

26

27

28

Declaration of Timothy Keller in Support of the Memorandum in Support of
Settlement in Response to the Court's Order (Dkt. #305)  - Page  3
CASE NO. C-01-0476

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois  62959
T (618) 998-9988 F (618) 998-0796

**ESTIMATION OF LOSS OF INCOME, PENSION AND INSURANCE**

**GIRISH PARIKH**

Ike Mathur, Ph.D.
4 Oxford Ln
Glen Carbon, IL 62034-1531
(618) 288-4025

Report revised: January 16, 2007

Signature:  *Ike Mathur*

<div style="border:2px solid black; display:inline-block; padding:10px; text-align:center;">

**Exhibit**

**A**

</div>

**SUMMARY OF ANALYSIS**

The value of lost income was estimated using the present value method with an offset discount rate of 1% for phase 2. Phase 1 covers the period from June 01, 2002 to June 01, 2007. Phase 2 covers the period from June 02, 2007 to end of life expectancy for Mr. Parikh and includes both a working component through October 31, 2013 and a pension and insurance benefits component through August 31, 2026.

On the basis of the assumptions and estimations in Tables 1 and 2 for the income, pension and insurance losses shown, the present value of Mr. Parikh's loss of income, pension and insurance is estimated to be $1,222,653, not inclusive of any doubling of damages, and exclusive of mitigation earnings.

**BASIC SOCIOECONOMIC DATA**

Date of birth                        December 1, 1942

Date of termination            May 31, 2002

Retirement date                   10/31/2013

Age on 10/31/2013            70.8 years

Sex, ethnicity                       Male, Indian

Life expectancy at age 70.8   12.8 years

**INFORMATION SOURCES UTILIZED**

For Girish Parikh

1.  Information from Mr. Keller's office

2.  Deposition of Nancy Ferrara

3.  Plaintiff's Exhibit 72.

Other

1.  Life Expectancy Table, U.S. National Center for Health Statistics

2.  Federal Reserve Board, Prime Rates

# ESTIMATION OF LOSS OF INCOME

## Outline of Estimation Procedure

The following procedure was utilized in estimating loss of income, pension and insurance.

**Determination of loss of income**. Income, pension and insurance losses are calculated based on the information available.

**Determination of Discount rate**. An offset rate of 1% is used for phase 2 for the income and pension losses and 0% for insurance losses.

**Time Period For Analyses**. The analyses were performed through the end of life expectancy for Mr. Parikh.

**Present Value Analyses**. The compound and discount rates were applied to the loss of income and pension to calculate the present values as of 06/01/2007.

## Determination of Loss of Income, Pension and Insurance Benefits

The loss of income, pension and insurance benefits for Mr. Parikh is based on the information provided to me. Details are summarized in the footnotes to Tables 1 and 2. Phase 1 is defined as the period from June 01, 2002 to June 01, 2007. Estimates for Mr. Parikh's income are provided in Table 1. The future value of income losses for Phase 1 is summarized in Table 1.

Phase 2 is the period from June 02, 2007 to the end of Mr. Parikh's life expectancy. Since the offset method is used in the income analysis, his income, pension and insurance losses are kept constant at the 2007 base levels. I.e., his earnings, pension and insurance

losses are stated in constant 2007 dollars.

It is assumed that Mr. Parikh received a lump sum pension in November 2013. The present value of this liump sum pension November 2013 is shown in Table 2.

It is assumed that Mr. Parikh started receiving retirement related insurance benefits in November 2013. The insurance benefits are calculated to the end of Mr. Parikh's life expectancy. Table 2 shows the estimation and present value of Mr. Parikh's insurance benefits.

### Determination of Discount Rate

The discount rate used in the analyses should reflect the time value of money. The yield on the one year t-bill rate is used as the reference point for the discount rate. On average, wages [medical care expenses] go up annually by an amount slightly less [more] than the one year t-bill rate. Compounding an amount by the wage growth rate [medical care expenses increase] and discounting it by the one year t-bill rate gives a present value that is the same if the amount had been discounted by the difference between the one year t-bill rate and the wage growth rate [medical care expenses increase]. This method is called the offset method and is used in this analysis for Phase 2 losses in Table 2.

An offset discount rate of 1% [0%] is used for discounting the Phase 2 income losses [insurance benefit losses] in Table 2.

### Time Period for Analyses

The analyses are conducted to the end of Mr. Parikh's life expectancy.

**Present Value Analyses**

The present value analyses for Phase 2 are summarized in Table 2.  The specific assumptions are provided in the footnotes to Table 2.

**SUMMARY**

The present value of Mr. Parikh's loss of income, pension and insurance are summarized below.

Phase 1:  June 01, 2002 to June 01, 2007

$491,764

Phase 2:  June 02, 2007 to end of life expectancy

$730,889

Total estimated loss of income, pension and insurance

$1,222,653

These estimates are not inclusive of any doubling of damages, and are exclusive of mitigation earnings.

It is possible that there may be other factors, which are not recognized here, that may influence the estimation of lost future income and pension.  If additional relevant information is provided, then this report and the related opinions will be appropriately revised.

**TABLE 1**
**ESTIMATION OF LOSS OF INCOME**
**PHASE 1: June 2002 - June 01, 2007**

==================================================

| Year | Age | Income Loss* | Mitigation Income~ | Interest on Net Loss^ | Total Loss |
|------|-----|------|------|------|------|
| 2002 | 59 | $44,202 | | $15,742 | $59,944 |
| 2003 | 60 | $78,427 | | $23,454 | $101,881 |
| 2004 | 61 | $81,172 | | $19,015 | $100,187 |
| 2005 | 62 | $84,013 | | $13,618 | $97,631 |
| 2006 | 63 | $86,954 | | $6,731 | $93,685 |
| 2007 | 64 | $37,799 | | $637 | $38,436 |

==================================================

| | Totals | $412,567 | $0 | $79,197 | $491,764 |

~Mitigation income, indicative, is $29,264 for 2004.


*2000 income                                      = $58,509.
 2001 estimated income        = $58,509 X 1.03 = $60,264.
 2002 estimated income =      $60264 X 1.03 = $62,072.
   SS @ 7.65% of $62,072                      =   4,749.
   401 K @ 3% of $62,072                      =   1,863.
   Other benefits                             =   7,091.
 2002 total estimated income                  = $75,775.
 2002 income loss             = $75,775 X7/12 = $44,202.


Income increases based on 3-4%, average 3.5%.
   2003, 3.5%
   2004, 3.5%
   2005, 3.5%
   2006, 3.5%
   2007, 3.5%

2003 estimated income and loss = $75,775 X 1.035 = $78,427.
2004 estimated income and loss = $78,427 X 1.035 = $81,172.
2004 unemployment compensation, mitigation         = $29,264.
2005 estimated income and loss = $81,172 X 1.035 = $84,013.
2006 estimated income and loss = $84,013 X 1.035 = $86,954.
2007 estimated income and loss = $86,954 X 1.035 = $89,997.
2007 estimated loss for Phase 1    = $89,997 X 0.42 = $37,799.

^Prime interest rates used:
   2002, 4.67%
   2003, 4.12%
   2004, 4.34%
   2005, 6.19%
   2006, 7.96%

**TABLE 2**
**ESTIMATION OF LOSS OF INCOME, PENSION AND INSURANCE**
**PHASE 2: FEB 10, 2007 to End of Life Expectancy**

| JUN/YR | AGE | INC/PEN/INS^ | P VALUE* | CUMULATIVE |
|--------|-----|--------------|----------|------------|
| 2007 | 64 | $52,198 | $52,047 | $52,047 |
| 2008 | 65 | 89,997 | 88,286 | 140,332 |
| 2009 | 66 | 89,997 | 87,407 | 227,739 |
| 2010 | 67 | 89,997 | 86,537 | 314,277 |
| 2011 | 68 | 89,997 | 85,676 | 399,953 |
| 2012 | 69 | 89,997 | 84,824 | 484,777 |
| 2013 | 70 | 74,998 | 69,983 | 554,760 |
| NOV 2013 | 70 | 77,488 | 72,307 | 627,067 |
| NOV 2013 | 70 | 1,348 | 1,348 | 628,416 |
| 2014 | 71 | 8,090 | 8,090 | 636,506 |
| 2015 | 72 | 8,090 | 8,090 | 644,596 |
| 2016 | 73 | 8,090 | 8,090 | 652,686 |
| 2017 | 74 | 8,090 | 8,090 | 660,776 |
| 2018 | 75 | 8,090 | 8,090 | 668,866 |
| 2019 | 76 | 8,090 | 8,090 | 676,956 |
| 2020 | 77 | 8,090 | 8,090 | 685,046 |
| 2021 | 78 | 8,090 | 8,090 | 693,136 |
| 2022 | 79 | 8,090 | 8,090 | 701,226 |
| 2023 | 80 | 8,090 | 8,090 | 709,316 |
| 2024 | 81 | 8,090 | 8,090 | 717,406 |
| 2025 | 82 | 8,090 | 8,090 | 725,496 |
| 2026 | 83 | 5,393 | 5,393 | 730,889 |
| TOTALS | | $758,490 | $730,889 | |

^Income loss estimations:
2007 estimated income and loss = $86,954 X 1.035 = $89,997.
2007 estimated loss for Phase 2 = $89,997 - $37,799 = $52,198.
All incomes are stated in constant 2007 dollars.
*Present values are calculated for June 01, 2007.
*2013 income losses are calculated through 10/31/2013.
*Discount rate - wage growth rate = 1%.

^Pension loss estimations:
2002 salary and bonus / total income = $62,072/$75,775 = 0.82
Pension is based on average of previous five years' salary.
Nov 2013 pension salary base = $89,997 X 0.82 = $73,798.
Nov 2013 pension loss = $73,798 X 1.05 = $77,488.

^Retirement insurance benefits loss estimations:
Life expectancy at age 70.8 years = 12 years and 10 months.
2002 insurance / total income = $6,816/$75,775 = 0.09.
Nov 2013 insurance stated in 2007 real dollars = $89,997 X 0.09 = $8,090.
Estimated insurance loss, Nov/Dec 2013 = $8,090/6 = $1,348.
^Insurance loss is calculated through 8/31/2026.
*Discount rate - medical care cost increase = 0%.

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9   UNITED STATES OF AMERICA,
    ex rel., Girish Parikh,                          No. C-01-0476
10
11          Plaintiff,                     CERTIFICATE OF SERVICE
12          v.
13   PREMERA BLUE CROSS,
     a Washington non-profit Corporation
14
            Defendant.

15          I hereby certify that on this date, I electronically filed the Memorandum in Support of
16
    Settlement in Response to the Court's Order (Dkt. #305), which will send notification of such
17
    filing to:
18
19      Peter Winn              Peter.Winn@usdoj.gov; Kathleen.M.Cline@usdoj.gov;
                                ECF-Civ.USAWAW@usdoj.gov; Pat.Buyce@usdoj.gov
20
        Karen F. Jones          kjones@riddellwilliams.com; jfader@riddellwilliams.com;
21                              jponikvar@riddellwilliams.com
22
        Harold Malkin           hmalkin@yarmuth.com; srasmussen@yarmuth.com;
23                              ltardiff@yamuth.com; mdiaz@yarmuth.com

        Kathryn Bucher          kbucher@wileyrein.com; lsimmons@wileyrein.com
24
25      Barbara Van Gelder      bvangelder@wileyrein.com

26
28

CERTIFICATE OF SERVICE - 1
NO. C-01-0476P

1    I declare under penalty of perjury under the laws of the State of Washington that the

2    foregoing is true and correct.

3           Dated this 21st of May 2007, at Marion, Illinois.

4                                                    _____/s/ Timothy Keller_____

5                                                    Timothy Keller

Aschemann Keller LLC
108 West Jackson Street
Marion, Illinois  62959
T (618) 998-9988 F (618) 998-0796